James H. ENGLAND, Appellant,

v.

UNITED STATES of America, Appellee.

No. 26352.

United States Court of Appeals Fifth Circuit.

Dec. 30, 1968.

Rehearing Denied Jan. 17, 1969.

L. B. Kent, Columbus, Ga., for appellant.

Floyd Buford, U. S. Atty., Macon, Ga., John C. Eldridge, Stephen R. Felson, Attys., Dept. of Justice, Washington, D. C., Edwin L. Weisl, Jr., Asst. Atty. Gen., for appellee.

Before BELL and COLEMAN, Circuit Judges, and BOYLE, District Judge.

## PER CURIAM:

The appellant unsuccessfully sued the United States under the Federal Tort Claims Act. He complained of personal injuries sustained on June 7, 1965 when he was thrown from a motorized golf cart which went out of control at the Fort Benning Country Club, operated by the Army. The Government, in turn, filed a third party complaint against the individual who had leased the cart to the golf course. It alleged that if the appellant had sustained any damages it was caused by the failure of the lessor properly to maintain the golf cart. The third party defendant pleaded prior settlement.

█ The Army as bailor, under Georgia law, was obligated to warrant the cart free from any secret fault rendering it unfitted for the purposes for which it was hired (Georgia Code, Section 12–204) and was required to use ordinary care to ascertain the presence of hidden defects, Hertz Drive-Ur-Self Stations, Inc. v. Benson, 83 Ga.App. 866, 65 S.E.2d 191 (1951).

At the conclusion of the trial on the merits the District Judge held that Mr. England had not met the burden of proving by a preponderance of the evidence that he was injured as a proximate result of negligence on the part of the United States.

In part, as the trier of the facts, the Court found as follows:

"All of the golf carts which are kept at the golf course are stored under a shed and the cart in question was driven from the shed to the rental 'line' earlier that morning by an attendant at the course. When the cart was driven to the line the attendant tested the brakes as he did with each cart that was placed on the line and determined that the brakes were operating properly. Mr. England drove the cart off down the first fairway and as the first 12 holes of the 18 hole course were played he and his partner, Mr. Shuff, alternated in operating the cart. The course is rather hilly and while traversing the first 12 holes Mr. England and Mr. Shuff operated the cart on going uphill, downhill and on relatively level areas. Neither Mr. England nor Mr. Shuff experienced any difficulty with the brakes during this time. After teeing off at the 13th tee the two of them occupied the cart and proceeded down a hill, and after they had gone about 15 or 20 yards Mr. England, who was driving at the time, attempted to apply the brakes and by pressing the brake pedal all the way down to the floorboard he found that the cart had no brakes whatever. When he discovered that the cart had no brakes he spoke to his partner, Mr. Shuff, telling him, 'Hold on, we don't have any brakes', and shortly thereafter Mr. England was thrown from the cart when it passed over a bump of some kind in the cart path, in con-

sequence of which Mr. England fell to the ground."

"It is to be noted that the evidence shows that no one had ever experienced any difficulty with the brakes on this cart prior to this date and that the brakes were tested earlier during the morning by the course attendant and found to be in proper working order and that neither the Plaintiff nor his partner had experienced any difficulty in the operation of the cart during 12 holes of play. It is to be further noted that there was no evidence offered by the Plaintiff as to what actually caused the brakes to fail on the 13th hole. However, Plaintiff did offer the testimony of a brake expert who testified that he had had experience with golf carts of this type and described the method of brake operation. He testified that the only practical way to test the brakes on the cart is by depressing the brake pedal to determine the effect of the brake application, and that the only other way to test the brakes would be to remove the brake drum and make an actual inspection. This expert further stated that the person using the cart would be the one in best position to know when the brakes were in need of adjustment if in fact they were in need of adjustment. He further stated it as his opinion that if the brakes on the cart gave out suddenly it is not an indication of improper adjustment, but is an indication of sudden mechanical failure. Specifically, the expert stated that if the brakes had been working properly when last applied while playing hole number 12, and if the first application of the brakes thereafter while playing number 13 demonstrated that there were 'no brakes', that this sudden loss of braking power would mean that something 'had broken' since the last application of the brakes."

The appellant vigorously complains of these findings, pointing to several aspects of the proof upon which the Court might have found to the contrary.

The clearly erroneous rule, too well defined and too often repeated to require further repetition here, commands quick disposition of these arguments. The findings are supported by substantial evidence in the record and we are thus rendered powerless to interfere.

To these facts, the Court correctly applied the Georgia law and the Judgment must be affirmed.

Consequently, we do not reach the settlement issue raised by the third party defendant.

Affirmed.